**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RICARDO GARCIA GONZALEZ, | ) | CASE NO. 1:13-CV-01358 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Ricardo Garcia Gonzalez ("Plaintiff"), challenges the final decision of

Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security

("Commissioner"), denying his application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This

Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is REVERSED and REMANDED for proceedings

consistent with this opinion.

## I.  PROCEDURAL HISTORY

On June 16, 2009, Plaintiff filed his application for SSI and alleged a disability

onset date of May 10, 2008.  (Transcript ("Tr.") 30.)  The application was denied initially

and upon reconsideration, and Plaintiff requested a hearing before an administrative

law judge ("ALJ").  (*Id.*)  On June 22, 2011, an ALJ held Plaintiff's hearing.  (*Id.*)

Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A

vocational expert ("VE") also participated and testified.  (*Id.*)  On July 19, 2011, the ALJ found Plaintiff not disabled.  (Tr. 24.)  On November 8, 2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 2.)  After receiving an extension of time to institute a civil action, Plaintiff filed his complaint to challenge the Commissioner's final decision on June 20, 2013.  (Doc. No. 1.)  The parties have completed briefing in this case. (Doc. Nos. 16, 17, 18.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred by failing to explain why she rejected opinions from state agency review psychologists Drs. Chambly and Meyer that Plaintiff is limited to occasional superficial interactions; (2) the ALJ did not adequately account for Plaintiff's limitations in social functioning; (3) the ALJ erred in finding that Plaintiff could perform work that exists in significant numbers in the national economy, because the jobs named cannot be performed by someone with Plaintiff's reaching restrictions; (4) the ALJ erred by relying on VE testimony that Plaintiff could perform work that exists in significant numbers in the national economy, because the VE testified that he did not know whether the jobs named could be performed by someone who does not speak English; and (5) the ALJ erred by relying on VE testimony that Plaintiff could perform jobs with a sit/stand option by using a work stool, because the VE did not know whether accommodation by the employer would be required for use of a work stool.

## II.   EVIDENCE

## A.    Personal and Vocational Evidence

2

Plaintiff was born in June 1975 and was 33-years-old on the date he filed his application.  (Tr. 41.)  He was not able to communicate in English.  (*Id.*)  He had past relevant work as a cleaner and construction worker.  (*Id.*)

**B.    Medical Evidence**

    **1.    Mental Limitations**

In November 2008, John Gray, D.O., completed a questionnaire at the request of the state agency regarding Plaintiff's mental health. (Tr. 409.)  Dr. Gray indicated that Plaintiff did not have a history of any mental health impairment and was not receiving any mental health treatment.  (*Id.*)

On September 2, 2009, Plaintiff sought mental health treatment at the Nord Center.  (Tr. 552.)  He reported that he needed help dealing with anxiety and depressive symptoms and to cope with the fact that his son had a chronic illness.  (*Id.*)  Plaintiff also noted that his back problems and psychiatric symptoms limited his daily living activities.  (Tr. 553.)  He did not report a history of learning difficulties or barriers to learning.  (Tr. 554.)  Plaintiff was diagnosed with major depressive disorder (moderate with psychotic features) and polysubstance dependence in sustained full remission.  (Tr. 561.)

Plaintiff attended therapy in September 2009, reporting anxiety, depression, and crying spells regarding the medical condition of his son, who was on a waiting list for a kidney donor and transplant.  (Tr. 570-572.)

In October 2009, David House, Ph.D., performed a psychological evaluation of Plaintiff at the request of the state agency.  (Tr. 575-578.)  Plaintiff reported that he was

3

applying for disability benefits because of his back problems.  (Tr. 575.)  He stated that he was depressed and suffered from anxiety.  (Tr. 576-577.)   Dr. House made the following conclusions regarding Plaintiff's condition: Plaintiff's ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks was markedly limited due to features of depression and posttraumatic stress; Plaintiff's ability to understand, remember, and follow instructions was moderately limited, and he would have difficulty following directions beyond 3-4 steps due to features of depression and posttraumatic stress; Plaintiff's ability to withstand stress and pressure associated with day to day work activity was markedly limited due to features of depression and posttraumatic stress; Plaintiff's ability to relate to others including fellow workers and supervisors was moderately limited, as he was socially isolated but did not appear to be agoraphobic and was able to get out to some degree going from church to the house and back; Plaintiff's level of adaptability appeared moderately limited; and Plaintiff's insight into his current situation and overall level of judgment appeared moderately limited.  (Tr. 578-579.)

In November 2009, Plaintiff reported some anxiety to his primary care physician, Priti Nair, M.D.  (Tr. 747.)  Dr. Nair documented that Plaintiff had no concentration problems.  (*Id.*)  Dr. Nair prescribed psychotropic medication for temporary control of Plaintiff's symptoms of anxiety related to his son's health issues.  (*Id.*)

In December 2009, Alice Chambly, Psy.D., a state agency psychologist, reviewed the evidence of record concerning Plaintiff's mental state.  (Tr. 580-597.)  Dr. Chambly opined that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; work in coordination with or proximity to

others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors.  (Tr. 580-581.)  Dr. Chambly concluded that Plaintiff could perform simple to moderately complex tasks with a relatively stable routine and at an average pace, and that Plaintiff should be limited to occasional superficial interactions. (Tr. 582.)  In June 2010, Steve Meyer, Ph.D., another state agency psychologist, reviewed the updated record and affirmed Dr. Chambly's assessment.  (Tr. 672.)

On January 6, 2010, Plaintiff underwent a consultative examination with Mehdi Saghafi, M.D.  (Tr. 601.)  Dr. Saghafi found that Plaintiff's speech, hearing, memory, orientation, and attention were within normal range.  (Tr. 603.)

In October 2010, Plaintiff was admitted to the Mercy Regional Medical Center for suicidal ideation surrounding his son's illness and upcoming kidney transplant.  (Tr. 816.)  Plaintiff admitted that he had not been taking any psychotropic medications.  (Tr. 824.)  Kong Kwon, M.D., documented that Plaintiff was cooperative, interacted well, and his cognitive functioning, including his memory, was intact.  (Tr. 824-825.)  After starting Plaintiff on psychotropic medication, Dr. Kwon found that Plaintiff's mood had improved significantly, and he exhibited no signs of depression or anxiety.  (Tr. 816.)  Thereafter, Plaintiff received therapy from the Nord Center.  (Tr. 766-792.)

### 2.     Physical Limitations

In April 2009, Plaintiff sought treatment with Dr. Gray for low back pain, which Plaintiff indicated had been going on for the past few years.  (Tr. 456.)  Dr. Gray

ordered x-rays and instructed Plaintiff to avoid heavy lifting and strenuous activities for two weeks.  (*Id.*)  An x-ray of Plaintiff's lumbar spine was "essentially unremarkable," revealing normal alignment, well-maintained vertebral body height, well-preserved intervertebral disc spaces, and no acute processes.  (Tr. 524.)  An x-ray of Plaintiff's right hand was also unremarkable.  (Tr. 630.)

In July 2009, Plaintiff sought treatment from Dr. Nair, reporting low back pain radiating into his right leg.  (Tr. 647.)  On examination, Plaintiff had full muscle strength, intact sensation, symmetrical reflexes in his extremities, no tenderness in his spine, and some limited range of motion in his spine and upper extremities.  (*Id.*)  Plaintiff walked with a normal gait, and straight leg testing was negative.  (*Id.*)  Dr. Nair's assessment included chronic mechanical low back pain.  (Tr. 648.)  In August 2009, Dr. Nair completed a questionnaire indicating that Plaintiff had no functional limitations as a result of his low back pain.  (Tr. 540-541.)

In September 2009, an electromyogram (EMG) of Plaintiff's lower extremities was normal, showing no evidence of radiculopathy or neuropathy.  (Tr. 749.)  In addition, Plaintiff's lumbar spine MRI revealed normal vertebral body height, no acute fractures, mild L5-S1 disc space loss but no foramen compromise or stenosis, and no sponylosis or spondylolisthesis.  (Tr. 757-758.)

Plaintiff underwent a short course of physical therapy in September and November 2009.  (Tr. 614-623.)  Thereafter, Plaintiff failed to appear for his scheduled appointments and was discharged from treatment as a result of his noncompliance. (Tr. 623.)

In November 2009, Plaintiff returned to Dr. Nair with complaints of back and

6

lower extremity pain.  (Tr. 747.) Dr. Nair found Plaintiff's muskuloskeletal and neurological examinations unremarkable.  (*Id.*)

In January 2010, Plaintiff underwent a consultative examination by Dr. Saghafi at the request of the state agency.  (Tr. 599-603.)  Upon examination, Dr. Saghafi noted some limitation during straight leg raising testing due to pain in the back of Plaintiff's thighs, but no other significant findings were documented.  (Tr. 602.)  Based on Plaintiff's history and the objective physical findings, Dr. Saghafi concluded that Plaintiff was able to sit, stand, and walk for six to eight hours per day and did not require an ambulatory aid.  (Tr. 603.)  He also found that Plaintiff could lift and carry 40-50 pounds frequently and 51-100 pounds occasionally; push, pull, and manipulate objects; operate hand and foot controlled devices; drive a motor vehicle and travel; and climb stairs. (*Id.*)  Dr. Saghafi's diagnosis included residual low back strain and sleep apnea.  (*Id.*)

On January 15, 2010, state agency physician W. Jerry McCloud, M.D., rendered an opinion regarding Plaintiff's physical residual functional capacity (RFC).  (Tr. 638-645.)  According to Dr. McCloud, Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday.  (Tr. 639.)  Dr. McCloud opined that Plaintiff's ability to push and/or pull (including operation of hand and/or foot controls) was unlimited.  (*Id.*) State agency physician Walter Holbrook, M.D., affirmed Dr. McCloud's opinion.  (Tr. 673.)

In April 2011, Plaintiff saw Darshan Mahajan, M.D., with complaints of numbness and pain in his hands and neck and shoulder pain, back pain, and pain in his ankles and in the back of his legs.  (Tr. 801.)  Upon examination, Plaintiff had normal muscle

tone, full muscle strength, intact sensation, symmetrical reflexes, and a normal gait. (Tr. 803.)  Dr. Mahajan's diagnosis included carpal tunnel syndrome, depressive disorder (not elsewhere classified), and anxiety (unspecified).  (*Id.*)  Dr. Mahajan recommended physical therapy.  (Tr. 804.)

In April and June 2011, Dr. Bharat Shah, M.D., treated Plaintiff for low back pain. (Tr. 841-848.)  On examination, Plaintiff had normal sensation, muscle strength, and reflexes in his upper and lower extremities, pain during lumbar spine range of motion, and normal range of motion in his shoulders.  (Tr. 843, 847.)  Dr. Shah's diagnosis was lumbar spine pain, pain in joint involving shoulder region, and cervical spine pain.  (Tr. 842-843).

**C.**    **Hearing Testimony**

    **1.**    **Plaintiff's Hearing Testimony**

Plaintiff last worked as a contractor in 2008.  (Tr. 56.)  At that job, he painted and polished floors and did insulation work.  (*Id.*)  After injuring his back at work, Plaintiff was dismissed from his job.  (Tr. 57.)  He testified that he could not work due to problems with his back and his hands and because he suffers from depression.  (Tr. 59.)  He could not pick up anything heavy with his right hand.  (Tr. 61.)  Plaintiff has had therapy and has taken medication for his mental health issues.  (*Id.*)  He had issues being around people.  (Tr. 62.)  "I get out of control.  I have to be calm and relaxed." (*Id.*)  Plaintiff got anxious often and had problems breathing as a result.  (Tr. 65.)

Plaintiff walked with a cane, which was not prescribed by a doctor.  (Tr. 62.)  He could walk 50-100 feet before having to stop due to pain in his leg.  (Tr. 63.)  He goes

to physical therapy one or two times per week, which helps "a little bit."  (Tr. 64-65.)  He also takes medications and receives injections.  (Tr. 66.)

Plaintiff could not read, write, speak, or understand English.  (Tr. 64.)

### 2.    Vocational Expert's Hearing Testimony

Ted Macy, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume an individual of the same age, education, and past work experience as Plaintiff who is unable to communicate in English.  (Tr. 69.)  The hypothetical individual was capable of: performing light work that involved lifting 20 pounds occasionally and 10 pounds frequently using his dominant hand for assistance rather than power; standing/walking for six hours in an eight-hour workday; and sitting for six hours in an eight-hour workday.  (Tr. 69.)  The individual would require the ability to change positions from standing to sitting at will.  (Tr. 69-70.)  The individual could occasionally reach forward or overhead with his dominant hand.  (Tr. 70.)  The individual could only occasionally climb stairs or ramps and could not perform work involving kneeling or climbing ladders or scaffolds, commercial driving, or exposure to hazards such as unprotected heights or uncovered industrial machinery.  (*Id.*)  The individual could only perform work involving routine, repetitive tasks with easily explainable changes and low stress work that would not require resolving conflicts or enforcing rules or demands on others.  (Tr. 70.)  The VE testified that the hypothetical individual could perform work as a wire worker, an electronics worker, and a final assembler.  (Tr. 71.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he

establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national

10

economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    Plaintiff has not engaged in substantial gainful activity since September 26, 2008, the previous application date.

2.    Plaintiff has the following severe impairments: right upper extremity strain, low back strain, sleep apnea, obesity, and anxiety.

3.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, I find that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) with additional limitations.
    •    He is able to lift twenty pounds occasionally and ten pounds frequently using the dominant hand as an assist more than for power.
    •    He can stand or walk for six hours during an eight-hour workday and sit for two hours during an eight-hour workday, provided that he is able to change positions at will.
    •    The work he can perform can occasionally require climbing stairs or ramps, but not climbing ladders or scaffolds, or kneeling.
    •    He can only occasionally reach forward or overhead with the dominant arm.  Handling and fingering are not affected by his dominant arm problems.
    •    The work cannot require commercial driving or exposure to hazards such as unprotected heights or uncovered industrial machinery.
    •    He can perform routine, repetitive tasks with easily explainable changes.
    •    The work should be low stress, defined as work that does not require resolving conflicts or enforcing rules or demands on others.

5.    Plaintiff is unable to perform any past relevant work.

6.    Plaintiff was born in June 1975 and was 33-years-old, which is

defined as a younger individual age 18-49, on the date he filed the application.

7.    Plaintiff is not able to communicate in English and is considered in the same way as an individual who is illiterate in English.

8.    Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

9.    Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

10.   Plaintiff has not been under a disability, as defined in the Act, since June 16, 2009, the date he filed the application.

(Tr. 32-43.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

> **B.    Plaintiff's Assignments of Error**
>
> > **1.    The ALJ Erred by Failing to Explain Why She Rejected the Opinions from State Agency Review Psychologists Drs. Chambly and Meyer that Plaintiff is Limited to Occasional Superficial Interactions.**

In December 2009, state agency psychological consultant Dr. Chambly opined that Plaintiff was moderately limited in his ability to interact appropriately with the general public and should be limited to occasional superficial interactions.  (Tr. 581, 582.)  State agency psychological consultant Dr. Meyer affirmed Dr. Chambly's opinion.  (Tr. 672.)  While the ALJ purports to have given great weight to the opinions of the state agency psychological consultants,[1] her RFC determination did not include a limitation for occasional superficial interactions.  (Tr. 37.)  Plaintiff argues that the ALJ erred by failing to explain why she omitted the restriction from Plaintiff's RFC.  For the following reasons, Plaintiff's argument is well taken.

---

[1]    The ALJ noted that the opinions from the state agency psychological consultants were "generally consistent with and supported by the mental health treatment documentation and the record as a whole" and "uncontradicted by treating mental health care providers."  (Tr. 40.)

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for her decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts her RFC finding, an ALJ must explain why she did not include its limitations in her determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Here, the ALJ did not discuss why she omitted the "occasional superficial interactions" limitation assigned to Plaintiff by state consultant Dr. Chambly.  Because the ALJ's calculation of Plaintiff's RFC was less restrictive than Dr. Chambly's mental RFC assessment, and, therefore, contradicted Dr. Chambly's opinion, S.S.R. 96-8p required the ALJ to explain her decision not to include Dr. Chambly's limitation of Plaintiff to only occasional superficial interactions in Plaintiff's RFC.

The Commissioner contends that Plaintiff's argument lacks merit because evidence in the record supports the ALJ's decision not to include greater limitations with regard to Plaintiff's social functioning in Plaintiff's RFC.  For example, the Commissioner notes that Plaintiff interacted appropriately with all of the examining and

14

treating sources of record, maintained relationships with his family and friends, and was very involved with his church.  (Tr. 552-553, 575, 601, 766, 769-770, 775, 777, 783, 791-792, 824-825.)  The Court agrees that there may be evidence in the record that Plaintiff may not be limited to only occasional superficial interactions, but the ALJ should have analyzed and explained that evidence.  The ALJ, however, did not discuss her decision to omit the limitation suggested by Dr. Chambly.  Thus, relying on other information in the record to explain why the ALJ ultimately omitted the limitation from Plaintiff's RFC would require this Court to engage in the *post hoc* rationalization that case law clearly prohibits.  *See Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) ("[A] simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.") (internal citations omitted).  For the foregoing reason, Plaintiff's first assignment of error presents a basis for remand.

**2.  The ALJ Did Not Adequately Account for Plaintiff's Limitations in Social Functioning.**

Plaintiff raises a second assignment of error addressing the ALJ's failure to impose restrictions on Plaintiff's interactions with supervisors and co-workers. According to Plaintiff, the ALJ found that Plaintiff had "moderate" difficulties in social functioning under the listings' B-criteria at step three of the sequential evaluation, but failed to restrict both the frequency and intensity of Plaintiff's social interactions.  (Tr.

15

36.)  Plaintiff contends that while the ALJ restricted Plaintiff to work that is "low stress, defined as work that does not require resolving conflicts or enforcing demands on others," she erred by failing to account for Plaintiff's limitations with regard to social interactions.  The Commissioner responds that none of Plaintiff's treating or examining sources found any limitations on Plaintiff's ability to interact socially, and the record reflects that Plaintiff interacted appropriately at medical appointments and maintained relationships with family and friends.  For the following reasons, Plaintiff's argument is well taken.

RFC is an indication of a claimant's work-related abilities despite his limitations. *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.  When determining a claimant's RFC, the ALJ is required "to consider the combined effect of all of the claimant's impairments. . . ." *Walker v. Sec'y of Health & Human Servs.,* 980 F.2d 1066, 1071 (6th Cir. 1992).

Here, Plaintiff contends that the ALJ's RFC determination is internally inconsistent and unsupported by substantial evidence, because she failed to include restrictions to accommodate Plaintiff's "moderate" mental limitations.[2]  In making this

---

[2]     At Step Three of the sequential evaluation process, the ALJ found that Plaintiff had a moderate limitation in "his ability to maintain adequate social functioning."  (Tr. 36.)

16

argument, Plaintiff cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support his contention that the ALJ's hypothetical – and RFC – did not sufficiently address Plaintiff's limitations regarding social interactions.  In *Ealy*, the record showed that the claimant had a limited ability to maintain attention over time, even when performing simple, repetitive tasks.  *Ealy*, 594 F.3d at 516.  Specifically, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical."  *Id.*  The ALJ, however, limited the claimant only to simple, repetitive tasks without any additional time-based limitations.  Accordingly, the Sixth Circuit found that the ALJ failed to adequately capture the claimant's limitations in concentration, persistence, and pace.  *Id.*

   *Ealy* undoubtedly stands for the proposition that an ALJ's hypothetical to a VE must adequately describe a claimant's limitations in order to serve as substantial evidence in support of the ALJ's conclusions.  *Id.* at 517.  However, *Ealy* "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace."  *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011) (Boyko, J.).  Rather, "*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions."  *Id*. at 4.

   Here, the record supports Plaintiff's contention that the ALJ erred by failing to incorporate restrictions related to the frequency and intensity of Plaintiff's social

17

interactions into the ALJ's RFC determination.  Plaintiff has pointed to evidence in the record from state agency consultant Dr. Chambly showing that Plaintiff requires such restrictions.  The ALJ noted that Dr. Chambly's opinion was uncontradicted and generally consistent with and supported by the mental health treatment documentation and the record as a whole.  (Tr. 40.)  Moreover, the ALJ specifically noted in her Step Three analysis that Plaintiff was moderately limited in his ability to maintain adequate social functioning.  (Tr. 36.)  The ALJ did not, however, explain why her RFC finding omitted social functioning restrictions altogether.  Instead, the ALJ purports to have believed that she accommodated those restrictions by limiting Plaintiff to work that does not require resolving conflicts or enforcing rules or demands on others.  (Tr. 37.)  Under the logic of *Ealy,* restricting a claimant to work that is "low stress" does not necessarily address Plaintiff's moderate limitations in his ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors.  As a result, Plaintiff's argument that the ALJ's RFC did not adequately account for Plaintiff's mental limitations presents a basis for remand.

### 3.    Substantial Evidence Does Not Support the ALJ's Finding that there are Jobs that Exist in Significant Numbers in the National Economy that Plaintiff can Perform.

Plaintiff's last three assignments of error relate to the adequacy of the VE's testimony at Plaintiff's hearing, therefore this Court will address them together.  Plaintiff argues that substantial evidence does not support the ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, because: (1) The jobs the VE identified require frequent reaching, while Plaintiff is

18

limited to only occasional reaching forward and overhead with his dominant arm; (2) the VE testified that he did not know whether the jobs he identified could be performed by someone who does not speak English; and (3) the VE testified that Plaintiff could perform jobs with a sit/stand option by using a work stool, but did not know whether accommodation by the employer would be required for use of a work stool.

At the fifth and final step of an ALJ's analysis, the ALJ must determine whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make an adjustment to other work.  20 C.F.R. § 404.1520(a)(4).  At this step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs.  *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).  Substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments.  *Workman*, 105 F. App'x at 799 (quoting *Varley*, 820 F.2d at 779).

### 1.    Plaintiff's Reaching Restrictions

The ALJ determined that Plaintiff had two limitations with regard to his ability to

reach:[3]  He could reach *forward* occasionally[4] with the dominant arm, and he could reach *overhead* occasionally with the dominant arm.  (Tr. 37.)  At Plaintiff's hearing, the VE testified that a hypothetical individual with Plaintiff's RFC–including Plaintiff's reaching restrictions–could perform work as a wire worker, an electronics worker, and a final assembler.  (Tr. 71.)  Later, under cross-examination by Plaintiff's counsel, the VE stated that he agreed with the Dictionary of Occupational Titles' ("DOT") specification of the reaching demands of the occupations he named.  (Tr. 83.)  Plaintiff contends that because the DOT descriptions of the three occupations provided by the VE require *frequent* reaching,[5] which exceeds the ALJ's restriction of Plaintiff to work involving occasional reaching forward and overhead with the dominant hand, the ALJ erred by relying on the VE's testimony to meet her Step Five burden.  The Commissioner argues that the Court should not consider Plaintiff's argument, because Plaintiff's counsel did not bring the conflict to the attention of the ALJ or question the VE about any inconsistencies between his testimony and the DOT concerning reaching demands. Furthermore, the Commissioner contends that the ALJ did not err with regard to her Step Five finding, because the DOT is not the Commissioner's sole source of job data.

The ALJ is under no obligation to investigate the accuracy of the VE's testimony

---

[3]   "Reaching" means extending the hands and arms in any direction.  *See* SSR 85-15.

[4]   "Occasionally" means occurring from very little up to one-third of the time. *See* SSR 83-10.

[5]   *See* DICOT 728.684-022 (G.P.O.), 1991 WL 679684 (wireworker); DICOT 726.698-010 (G.P.O.), 1991 WL 679633 (electronics worker); DICOT 713.687-018 (G.P.O.), 1991 WL 678271 (final assembler).

beyond the inquiry mandated by Social Security Regulation 00-4p, because that obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009).  "The fact that plaintiff's counsel did not do so is not grounds for relief."  *Id.*; *see also Donahue v. Barnhart*, 446 F.3d 441, 446 (7th Cir. 2002) ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation.  Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late.").  *But see Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so obvious during the VE's testimony that the ALJ should have noticed them and elicited reasonable explanations).

Here, Plaintiff's counsel asked the VE whether he agreed with the DOT's specification of the reaching demands of the occupations he named, and the VE testified that he did.  (Tr. 83.)  Plaintiff's counsel did not, however, ask the VE what the reaching restrictions in the DOT were for the jobs named.  Thus, the ALJ had no reason to believe that, in the DOT, the jobs the VE named require frequent reaching.  Because Plaintiff's counsel did not raise any discrepancy between the VE's testimony and the DOT at the hearing, Plaintiff cannot now argue that the ALJ erred by relying on the VE testimony to find that Plaintiff can perform a significant number of jobs that exist in the national economy.  The ALJ specifically asked the VE to consider Plaintiff's RFC–including Plaintiff's limitation to occasional reaching forward and overhead with his dominant hand–and the VE testified that Plaintiff could perform work as a wire worker, an electronics worker, and a final assembler.  (Tr. 69-71.)  Plaintiff's counsel did

not seek further clarification of the VE's testimony, and Plaintiff fails to explain how this testimony is an inadequate basis for the ALJ's determination.  Given that Plaintiff's counsel did not challenge the VE's testimony during the hearing, Plaintiff cannot now seek relief on this point.

### 2.    Plaintiff's Inability to Communicate in English

The ALJ found that Plaintiff is unable to communicate in English.  (Tr. 41.)  In her hypothetical to the VE, the ALJ asked the VE to consider "the age, education and past relevant work of the claimant, and to be specific I mean a 33-year-old man who is unable to communicate in English. . . ."  (Tr. 69.)  The VE testified that there were jobs available in the national economy that a person with Plaintiff's limitations could perform.[6]  (Tr. 71.)  On cross-examination by Plaintiff's counsel, the VE testified that he did not know whether the jobs he named would require the worker to speak English. (Tr. 87.)  The VE also testified that he did not know how many of the jobs identified had Spanish-speaking supervisors.  (Tr. 83-85.)  Plaintiff argues that substantial evidence does not support the ALJ's Step Five finding, because the VE's testimony was equivocal about whether communicating in English was a requirement for the identified jobs.

Here, the ALJ explained in her decision that in making her Step Five finding, she relied not only the DOT, but on the VE's professional experience as well as data from the Department of Labor and the Bureau of the Census.  (Tr. 43.)  At Plaintiff's hearing, however, the VE was unsure of the extent that the jobs he named required the worker

22

to speak English.  (Tr. 87.)  While the VE believed that the tasks of the named unskilled occupations could be learned with a simple visual demonstration, he expressed doubt as to whether an individual who does not understand English could also comprehend "ordinary work rules, reminders, supervision, and other things other than technically learning the tasks of the job that are involved."  (Tr. 83, 85.)  Thus, although the Commissioner is correct in noting that an ALJ can reasonably rely on the expertise of a VE to determine that a claimant can perform certain jobs, here the VE appeared uncertain as to the impact of Plaintiff's language limitation on his ability to perform the jobs identified.  The ALJ did not address the VE's testimony on this point in her Step Five finding, nor did she discuss the impact of Plaintiff's inability to communicate in English on his ability to perform the jobs the VE identified.  (Tr. 41.)  As a result of the VE's uncertain testimony and the ALJ's lack of explanation regarding Plaintiff's language barrier, is it unclear as to whether substantial evidence supports the ALJ's Step Five finding.  Because Plaintiff's first two assignments of error present a basis for remanding this case, the ALJ is hereby directed to indicate on remand the evidence upon which she relied to conclude that Plaintiff is capable of performing work that exists in significant numbers in the national economy despite his inability to communicate in English.

### 3. Plaintiff's Need for a Sit/Stand Option

The ALJ found that Plaintiff requires a sit/stand option.  (Tr. 77.)  The VE testified that to perform the jobs he identified with an option to sit and stand at will, a stool would be required.  (Tr. 78.)  The VE indicated that he did not know whether an employer would provide the stool as an accommodation.  (Tr. 79.)  While he testified that he had

seen the occupations he identified performed with some workers using a stool, the VE did not know in how many of those instances the employer had allowed use of the stool as an accommodation of the employee's disability.  (*Id.*)  Because of the VE's uncertainty on this point, Plaintiff contends that the ALJ did not obtain required evidence that an employer accommodation was not required to perform the jobs identified.  Plaintiff's argument is not well taken.

As the Commissioner correctly notes, the VE testified that there are a significant number of positions in the national economy from the representative occupations that allow for a sit/stand option at will, and the ALJ relied on this testimony in making her Step Five finding.  (Tr. 43, 74-82.)  While the VE did not know exactly how many employers would provide a stool as an accommodation, this does not undermine the VE's testimony that the identified jobs can be performed by an individual who requires a sit/stand option.  It is unreasonable to suggest that a VE must be aware of how many employers in a given area would provide a stool as an accommodation. The VE testified that, based on his experience with the electronics worker and final assembler jobs that he's observed, "the stool isn't an issue." (Tr. 81.)  Accordingly, Plaintiff's argument on this point does not present a basis for remand.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: March 28, 2014

24